No. 16,944.

BROWN ET AL. *v.* LANDY.

(261 P. [2d] 484)

Decided August 24, 1953.   Rehearing denied September 28, 1953.

Mr. BERNARD J. SEEMAN, Mr. JAMES D. DOYLE, Mr. CHARLES D. BROMLEY, for plaintiffs in error.

Mr. BENJAMIN C. HILLIARD, JR., Mr. GRAHAM SUSMAN, for defendant in error.

*En Banc.*

MR. CHIEF JUSTICE STONE delivered the opinion of the court.

IT appears from the record that defendant Woodmen of the World is a fraternal benefit society without capital stock, organized in the year 1891 under the laws of the State of Colorado, having in 1949 approximately 40,000 beneficial members, and reserves and surplus in addition to its regular reserves of approximately $3,000,000, which had been increased in the amount of more than $190,000 in the three years next preceding. Plaintiff Hyman D. Landy was a member holding a $1,000 benefit certificate therein and the individual defendants were officers or directors during all or part of the years 1946, 1947, 1948 and 1949.

Plaintiff Landy brought suit in behalf of himself and all others similarly situated, alleging that during said years prior to and including March 25, 1949, defendant society and the individual defendants unlawfully and wrongfully transferred and diverted funds collected by the society for mortuary and disability purposes, and used the same for expenses in violation of chapter 87, section 179, '35 C.S.A. (as the same read prior to the amendment thereof on March 25, 1949), and thereby unlawfully and wrongfully diminished the security, funds and reserves for the payment of the benefit certificates issued by the society; that the amount of the funds so diverted was $365,000.00; that by reason thereof the individual defendants were liable for the payment and restoration of those portions of said sum which were diverted and transferred during their respective terms of office and the society was liable for the restoration of all thereof. Fidelity and Deposit Company of Maryland was joined as liable for sums that might be adjudged due from one or more of the individual defendants and a deceased officer, as surety on their bonds. Judg-

ment was prayed against the individual defendants for the use of the Woodmen of the World for the sums expended during their respective terms of office, and against the society for the restoration of all such funds, and for an injunction restraining the society, its officers and agents from again diverting or transferring any of the funds so restored for any excepting mortuary and disability purposes.

In their several answers, defendants pleaded inter alia that the complaint failed to state a claim upon which relief could be granted; denial that any money collected for mortuary or disability purposes was transferred or diverted or used for expenses; denial of any transfer of funds wrongfully or in violation of statute; affirmatively pleaded that the transferred moneys to which reference is made in the complaint were taken from surplus and not from any moneys collected for mortuary or disability purposes or any of its accretions; and that defendants at all times acted in good faith in the exercise of honest judgment and to the best of their ability, skill and discretion and for the benefit of the Woodmen of the World.

Thereafter, upon the pleadings and the deposition and affidavits of certain individual defendants, the court entered summary judgment, finding that the Woodmen of the World had unlawfully and wrongfully transferred and diverted from its head camp fund moneys collected for mortuary or disability purposes and used the same for expenses in violation of chapter 87, section 179, '35 C.S.A. (as it read prior to the amendment thereof March 25, 1949), in the amount of $350,000, and thereby unlawfully diminished the funds and reserves for the payment of beneficial certificates; that the provisions of section 28(b) and 28(c) of the constitution and by-laws of the defendant society did not, as required by said statute, distinctly state the purpose of the payments made by members and the proportion thereof which might be used for expenses, and were void; that the defendant society should be required to restore to the head camp

fund, to be used for mortuary and disability purposes only, said sum of $350,000; that the several individual defendants were personally liable in varying amounts as therein set forth for such restoration; that plaintiff was entitled to reasonable counsel fees out of the sums restored and that there was no genuine issue as to any matter of fact. Several judgments were entered against the several individual defendants for sums varying from $100,000 to $350,000, making a total of $1,600,000, and against defendant Woodmen of the World that it restore to the head camp fund the sum of $350,000 taken therefrom, without regard to whether the individual judgments should be collected, and that it and its officers, directors and agents be enjoined and restrained from using any part of said fund or interest thereon or accretions thereto for any purposes except mortuary or disability purposes.

Chapter 87, section 179, '35 C.S.A., upon which the court predicated its judgment, reads as follows: "Every provision of the laws of the society for payment by members of such society, in whatever form made shall distinctly state the purpose of the same and the proportion thereof which may be used for expenses and no part of the money collected for mortuary or disability purposes or the net accretions of either or any of said funds shall be used for expenses."

Sections 28(b) and 28(c) of the constitution and by-laws, held void by the court's judgment as in conflict with said section 179 of the statute, so far as here pertinent, read as follows: (b) "All cash, securities or other assets of the Association on hand September 30, 1932, and thereafter collected or accrued * * * shall constitute the 'Head Camp Fund,' from which all thereof properly and lawfully applicable for expense purposes shall be segregated and placed in the 'General Fund.' * * *."

(c) "That portion of any and all payments made by members with accretions thereto actually required to pay valid claims currently arising and to maintain the

legal and necessary reserves for full payment and discharge of any and all obligations under all certificates in force shall be collected and applied for such purposes, and any portion of such payments or funds in excess of such requirements shall be available for necessary expenses or for refunds or credits to members in the manner and to the extent determined by the Board of Directors. Surplus shall consist of sums accumulated after provision has been made for legal and necessary reserves, other liabilities and any apparent contingencies, and may be apportioned, credited or disbursed at such time or times, and in such manner, amounts and methods as the Board of Directors may, in its judgment and discretion, determine and direct. * * *."

Section 179, above quoted, contains two separate requirements. The first requirement is, that every provision for payment by members shall distinctly state the purpose of the payment and the proportion which may be used for expenses. The second requirement is, that no part of the money collected for mortuary or disability purposes or its accretions shall be used for expenses. No penalty is provided for violation of the first requirement and failure to comply with it would result in no ascertainable loss to the society and constitute no ground for action for damages or restoration to the society. The second requirement is independent of the first and independently enforcible where it is not complied with.

Section 28(b), held void by the trial court, provides in brief that all payments from members or otherwise, whether for mortuary or expense purposes, shall be placed in a single. fund, the "Head Camp Fund," from which sums applicable for expense purposes shall thereafter be segregated and placed in the "general fund." It is not for the court to consider whether this is good accounting practice, but only whether it is in conflict with section 179 of the statute. It is not a "provision for payment by members," and it does not in any

respect require nor permit the use for expenses of any part of the money collected for mortuary or disability purposes, as prohibited by the statute. Further, the validity of 28(b) is nowhere challenged in the complaint. Therefore, the determination of the trial court that it was void was both erroneous and gratuitous.

Section 28(c), also held void, distinctly states the purpose of payments made by members and the portion thereof which may be used for expenses, to wit, any portion in excess of the amount required to pay valid claims currently arising and to maintain the legal and necessary reserves for full payment and discharge of any and all obligations under all certificates in force. It does not state that any part of the money collected for mortuary or disability purposes shall or may be used for expenses, contrary to the statute. Rather it states what portion thereof is collected and may be used for expenses. If the statement in 28(c) of the *portion* of the amount which may be used for expenses was in compliance with the statutory provision then in effect requiring statement of the *proportion* which may be used for expenses, then Section 179 has been fully complied with. If it was not sufficient to comply with that requirement which involved no penalty, still it is not in violation of the second requirement of the statute that no part of the money collected for mortuary or disability purposes shall be used for expenses.

Plaintiff's argument seems to be that in case of failure of the society to comply with the requirement of section 179 that the society state what proportion of payments may be used for expenses, none of the money may be used for expenses. Such was not the purport of the statute. Its prohibition is not against the use of any money for expenses, but only against the use therefor of any money collected for mortuary and disability purposes. Therefore the use of funds here complained of was not in violation of the requirement of the statute unless funds so used were transferred or diverted from

moneys required to pay claims and to maintain legal and necessary reserves, as provided in 28(c).

There appears to be no dispute as to the facts which appear from the pleadings, deposition and affidavits. There is no showing or suggestion that there was any provision in the constitution or by-laws of the society or elsewhere that all moneys received from the members should be used for mortuary or disability purposes or that there was any provision contrary to the plain provisions of section 28(b) and 28(c) that all cash, whether received for mortuary, disability or expense purposes, should first be placed in the head camp fund; that the portion of such payments in excess of the amounts necessary for mortuary and disability purposes should be available for necessary expenses, and that surplus, as defined in section 28(c), might be apportioned and disbursed at such times and in such amounts as the board of directors might in its judgment determine. There is no suggestion that the money so received both for mortuary and expense purposes was not so placed in the head camp fund. Accordingly, that fund was not a fund solely for mortuary or disability purposes, but rather was an "all purpose" fund, and the transfer of moneys from said fund to the general fund for payment of expenses, as was here made, was proper, provided that the portion thereof required to pay valid claims currently arising and to maintain proper reserves should first have been applied for such purposes.

Exhibits in evidence disclose that on January 1, 1946, the beginning of the period during which complaint is made of wrongful transfer of funds from said head camp fund, the society had applied proper amounts for purposes of payment of claims and legal reserves, and in addition thereto had on hand and had set up as reserves and surplus a total of $2,865,416.65, and that on January 1, 1949, in addition to its legal reserves, it had increased the surplus items to a total of more than $3,000,000. Thus the undisputed records disclose that there were at

all times in said head camp fund moneys collected and held in excess of the amounts necessary for mortuary and disability purposes and properly available for expense purposes in amounts greater than those transferred, and such transfers were not wrongful.

Plaintiff relies on *Attorney General v. New England Order of Protection,* 312 Mass. 106, 43 N.E. (2d) 334. There the society had two funds, a general expense fund and a mortuary fund, and it was held that under a statute identical with our section 179, money could not be taken from the mortuary fund to pay items which were properly classified as expense. So, also, in *Catholic Order of Foresters v. Commissioner of Insurance,* 256 Mass. 502, 152 N.E. 889, the society had two funds, an expense fund and a mortuary fund, and it was held improper to use money taken from the mortuary fund for payment of expenses. In the case before us, on the contrary, the money used for expense was not taken from a mortuary fund but from a general purpose fund in amounts properly allocatable to expense.

There is no contention here that any individual defendant used any money of the society for personal purpose or gain, or for any purpose other than to pay proper debts of the society. There is no contention that such expenditure was made contrary to any requirement or instruction of the society or of the Head Camp Session which directed their operations. There is no contention that they did not faithfully carry out their duties in accordance with the constitution, by-laws and instructions. There is no contention that they did not faithfully conserve the funds of the society and under their management increase its assets and surplus. The sole contention is that they transferred and diverted funds collected for mortuary or disability purposes and used them for expenses. Not only is there no proof whatever to support plaintiff's claim, but the entire evidence from the record shows that all the funds transferred and diverted by defendants for payment of expenses were

transferred and diverted from the head camp fund, and that such fund was not collected solely for mortuary or disability purposes, but was a general purpose fund, including money available for expenses, and that the amounts transferred for payment of expenses were properly transferred from that fund for such purpose.

The judgment is reversed and the cause remanded with instructions to dismiss.

MR. JUSTICE HOLLAND not participating.